## John M. Weger, Appellee, v. The Robinson Nash Motor Company et al., Appellants.

Opinion filed October 31, 1929. Rehearing denied December 9, 1929.

Jones & Lowe, for appellants.

Parker, Cox & Eagleton, for appellee.

Mr. Justice Wolfe delivered the opinion of the court.

The Robinson Nash Motor Company, a corporation, was organized in May, 1924, and at once began business at Robinson, Illinois. The Wegers were stockholders in the corporation, and held stock therein from the organization of the corporation to the time of the hearing of this case.

About March 1, 1925, it was found that the Motor Company did not have sufficient available money to carry on the business as desired, and on March 20, 1925, John M. Weger and Charles Weger executed a note to the Robinson State Bank for $3,000. The proceeds from said note were placed to the credit of the Motor Company at said bank. Prior to this time the bank had extended to the Motor Company a line of credit

to the amount of $6,000. After this was done the Motor Company became indebted to the bank considerably in excess of $6,000.

The business relation between the bank and the Motor Company became unsatisfactory to the cashier of the bank, and Adlai A. Weger, the manager of the Motor Company was so notified. At the same time the cashier of the bank told Mr. Adlai A. Weger, the manager of the said Motor Company, that the bank would extend a line of credit to the Motor Company to the amount of $15,000 if they would give a guarantee signed by persons connected with the Motor Company, as designated by the cashier of the bank. The suggestion of the cashier to Mr. Weger was satisfactory, and a written guarantee was signed. After the guarantee was signed, one of the guarantors wished to be released, and for that purpose a second guarantee contract was signed which is as follows: "We, the undersigned Directors and Stockholders of the Robinson Nash Motor Company do hereby guarantee the payment of notes of said Company given the Robinson State Bank of Robinson, Illinois, and hereby agree to be personally liable therefor and to all the conditions and requirements written in said notes in consideration of said Bank extending to said Robinson Nash Motor Company a credit of ($15,000.00) bearing interest at the rate of (6) per cent per annum, with the privilege of paying off said notes at any time and stopping the interest thereon, made in duplicate this 28th day of October, A. D., 1925.

> J. M. Weger,
> Charles J. Weger,
> A. A. Weger."

"Accepted by The Robinson State Bank this 5th day of November, 1925."

> "O. M. Davis, Cashier."

At the time of executing the guarantee contract in question the Motor Company was indebted to the Rob-

inson State Bank in the amount of $14,365.91, evidenced by seven promissory notes. These notes are known as Exhibits Nos. 4, 7, 8, 9, 10, 21, and 23. On March 13, 1926, the bank and the Motor Company agreed there was due on the notes marked Exhibits Nos. 4, 7, 9, 10, and 12, respectively, the sum of $12,797.92. The Motor Company paid on this amount $97.92, and a new note for $12,700, known as Exhibit No. 5, was executed. Notes marked Exhibits Nos. 4, 7, 9, 10, and 12, respectively, were marked "Paid."

On January 13, 1926 the bank and the Motor Company agreed that there was due on the note marked Exhibit No. 23, $832 and a new note marked Exhibit No. 13, was executed and the note marked No. 23 was marked "Paid." Later on a note marked Exhibit No. 3 was paid by the appellee. The amount due with interest was $753.42. On March 13, 1926, the Bank and the Motor Company agreed that there was due on the note marked Exhibit No. 18, the sum of $188.50. The note was marked "Paid" and "Canceled," and the note marked Exhibit No. 6 was executed. Said note was later paid by the Motor Company and is not now in controversy.

The note of $12,700 given on March 13, 1926, was made payable on demand. This note was canceled and marked "Paid" on January 13, 1927, and a new note was given from the Motor Company to the bank being marked Exhibit No. 14.

The bank was demanding payment of the indebtedness on the note of $12,700, which is marked Exhibit No. 14, and other indebtedness owing from the Motor Company to the bank, and gave notice to the Motor Company and all of the guarantors on the guarantee contract that this indebtedness should be paid. John M. Weger, the appellee herein, has paid the bank on said indebtedness an amount in excess of $5,000.

John M. Weger, appellee herein, started a suit in chancery in the September Term, 1928 of the circuit

court of Crawford county, Illinois, making the Robinson Nash Motor Company, Chas. J. Weger, appellant, the Robinson State Bank, and Adlai A. Weger, defendants therein, whereby he prayed for an accounting between himself and the defendants. On a hearing of the case the court decreed that the appellant, Chas. J. Weger pay to John M. Weger, the appellee, the sum of $5,526.16, and that John M. Weger pay to the Robinson State Bank $7,671.97; that the appellee and appellants should each pay one-half of the costs.

From the decree the appellant, Charles J. Weger, perfected his appeal to this court and has assigned numerous errors in support of his contention that the findings of the court are incorrect. The appellee has filed cross errors that the decree is not supported by the law and evidence in the case.

We are of the opinion that it is only necessary to discuss one assignment of error raised in the case, viz: "Was the appellant Charles J. Weger released from liability on the notes which were guaranteed by the contract, when the Motor Company executed new notes for the then existing notes at the date of the guarantee, and whether by so doing the first, or old notes, were paid at the time the renewal notes were executed?"

Our Supreme Court has held that the giving of a new note is prima facie payment of the old one. *Trego v. Cunningham, Estate of,* 267 Ill. 367, 376. In the later case of *Boulter v. Joliet Nat. Bank,* 295 Ill., at page 594 the court says: "The giving of a promissory note in renewal of another does not, of itself, operate as a satisfaction of the original note. Whether it does so or not is a question of fact for the determination of a jury and depends upon the intention of the parties. If it is made and accepted for such purpose the former note is satisfied. *Belleville Savings Bank v. Bornman,* 124 Ill. 200; *Jansen v. Grimshaw,* 125 Ill. 468."

In the *Boulter* case, stock was pledged for the payment of the note and unbeknown to the owner of the stock, the old note was canceled and a new note given to the bank. The court held that under the circumstances the bank had considered that the first note was paid and therefore the owner of the stock pledged, was entitled to recover the stock and the bank had no claim upon it. The Appellate Court of the First District in the case of *West Madison State Bank v. Mudd,* 250 Ill. App. 258, in passing upon a similar case to this, held that there is a distinction between an extension of time to pay a note and a renewal, and we think that the language used in the *Mudd* case is applicable to this case. (See also *Kimbell Trust & Sav. Bank v. Hartford Accident Co.,* 248 Ill. App. 23.)

The same subject was discussed by the court in the case of *Childs v. Pellett,* 102 Mich. 558, 61 N. W. 54, in which they say: ''Unless there is evidence of a contrary intention, 'renewals at a bank ought always to be regarded as payments because the banks themselves so regard them.' '' Numerous cases decided by the Supreme Courts of other States could be cited in which it is held that when a note given to a bank has been taken up and marked ''Paid'' by the bank and a new note given in its stead that this will be in law considered a payment of the old note, and any sureties or guarantors of the original note will be discharged from further liability upon the original note. Practically all of the decisions which we have examined hold that the giving of the new note is prima facie evidence that the original note was intended to be paid. This presumption however may be rebutted by evidence.

From the facts and circumstances in this case we are of the opinion that the written agreement was as to the existing notes at the time the contract of guaranty was signed and there was no provision for a renewal

of the same. The notes were renewed and the time of payment extended, the old notes marked "canceled and paid."

We find no evidence in the record that Charles J. Weger consented to the renewal of these notes, nor do we find any ratification of the same. The extension of time of payment by renewal of the notes in the absence of consent or subsequent ratification of the same, by the appellant, operated as a discharge as to him from further liability on these notes.

The judgment of the circuit court of Crawford county, Illinois, is hereby reversed.

*Reversed.*